


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BLAKE WINGATE,

Plaintiff,

-v-

No. 05 Civ. 2001 (LTS)(HBP)

N.Y.C. DEPARTMENT OF CORRECTION
COMMISSIONER HORN, ET AL.,

Defendants.

-------------------------------------------------------x

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## MEMORANDUM OPINION AND ORDER

Blake Wingate ("Wingate" or "Plaintiff"), an individual who alleges that he was at the times relevant to the subject matter of this complaint a pretrial detainee in the custody of the New York City Department of Corrections ("NYCDOC"), brings this action pro se pursuant to 42 U.S.C. § 1983. In his amended complaint, Plaintiff asserts principally that his constitutional rights have been violated in that, while incarcerated at Rikers Island in New York City pending trial on criminal charges, he was denied the right to vote in the November 2, 2004, general election. He challenges the lack of provisions for on-site Election Day voting at the Rikers Island facility. Plaintiff also alleges that his constitutional rights were violated when his efforts to file a grievance concerning the voting issue were rebuffed or delayed, and by a series of transfers among Rikers Island facilities that he claims was designed to frustrate his efforts to obtain a hearing on his grievances. Plaintiff further complains that New York State elections and corrections officials failed to respond to his letters concerning the voting arrangements at Rikers Island. With respect



Copies mailed 1/4/07
Chambers of Judge Swain

to his voting claim, Plaintiff seeks damages in the amount of $600 million, a mandate that in-person Election Day voting facilities be made available at Rikers Island for prisoners and staff, and related relief.

Named as defendants are: Martin Horn, the Commissioner of NYCDOC; Stanley Kreitman, the former Chair of the New York City Board of Correction ("NYCBOC"); numerous current and former New York City Board of Elections ("NYCBOE") Commissioners; NYCDOC grievance coordinators Pauline Mimms and "Mr. Robinson"; Alan Croce, Chair of the New York State Commission of Correction ("NYSCOC"); and numerous Commissioners and other officials of the New York State Board of Elections ("NYSBOE").[1] The Amended Complaint does not specify whether Plaintiff intends to sue these defendants in their individual capacities only, or in both their individual and official capacities. In light of his broad assertions in the body of the pleading of denials of voting and grievance rights by NYCDOC, NYCBOC and NYCBOE, and his request for structural as well as monetary relief, the Court construes Plaintiff's claims as asserted against the named defendants related to those entities in both capacities. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

Three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 are currently before the Court. The New York City-related defendants other than Mimms and Robinson[2] (the "City Defendants") seek dismissal of Plaintiff's voting-related claims, as well as his

1 Plaintiff also asserted claims against certain commissioners and other officials of the Federal Election Commission; the federal defendants' motion for summary judgment dismissing the complaint as against them was granted in a Memorandum Opinion and Order entered on November 17, 2005.

2 The moving City Defendants assert that Mimms and Robinson were never properly served. (City Defs. Mem. of Law at 2, n.2.) The Court notes that, on December 2, 2005, Magistrate Judge Pitman denied a request by Plaintiff for relief relating to service on Mimms and Robinson, apparently on the ground that the service issue had

allegations regarding failure to respond to his complaint letters, for failure to state a claim, and also contend that his claims against the individual defendants should be dismissed for insufficient allegations of personal involvement in denying his requests to vote on Election Day and on grounds of qualified immunity. Defendant Croce, the NYSCOC, moves to dismiss the claims against him on grounds of lack of personal involvement and failure to state a claim; his motion also seeks dismissal of Plaintiff's claims on Eleventh Amendment grounds to the extent they are asserted against him in his official capacity. The NYSBOE defendants assert that they are entitled to dismissal on grounds of lack of personal involvement as well as qualified immunity, and because Plaintiff's voting-related claims are legally insufficient. Each motion was accompanied by the Notice to Pro Se Litigant required by S.D.N.Y. Local Civil Rule 56.2 and a statement of undisputed facts pursuant to S.D.N.Y. Local Civil Rule 56.1. Plaintiff filed and served three extensive sets of papers in response to the motions.[3] None of the movants filed reply papers.

The Court has reviewed carefully the pleadings and all of the parties' arguments and submissions. For the following reasons, the City Defendants' motion is granted insofar as it seeks dismissal of the voting access-related aspects of the amended complaint, and is also granted insofar as it seeks dismissal of Plaintiff's claims relating to failure to act on his complaints about the voting issues. The motion is denied insofar as it seeks dismissal of Plaintiff's claim against the NYCDOC

---

been mooted by the summary judgment motion.

3 Plaintiff's "Response to A.A.G. Motions," dated October 14, 2005 ("Pl. Opp. to NYCOC") (Docket item no. 71), principally responds to Commissioner Croce's motion; Plaintiff's submission titled "Summary Judgement Application State Board of Elections" ("Pl. Opp. to NYSBOE" ) (Docket item no. 70) principally responds to the NYSBOE's motion; a lengthy uncaptioned submission, received in chambers on November 1, 2005, and commencing with a table of contents ("Pl.'s Opp.") (Docket item no. 72), has been docketed as "Plaintiff's Opposition to Summary Judgment Motions" and appears to be addressed to all of the motions.

commissioner relating to transfers among facilities following the filing of Plaintiff's NYCDOC grievance concerning the voting issue. The motions of NYSBOE defendants and defendant Croce are granted in their entirety.

BACKGROUND

The following material facts are undisputed, except to the extent specifically characterized below as allegations or assertions. Plaintiff Wingate, who currently resides at the Sing Sing correctional facility in Ossining, New York, was housed at the George Motchan Detention Center ("GMDC") on Rikers Island ("Rikers") on Election Day 2004. Plaintiff alleges that he entered NYCDOC custody as a pretrial detainee on October 20, 2005. (Pl. Opp. to NYSBOE, 2.) Plaintiff alleges that he sought an absentee ballot "by application" and that "they never ever responded to his letter, application." (Id., 4.) It is undisputed that no on-site voting facilities were provided at Rikers on Election Day and that Plaintiff was unable to cast a vote on Election Day. Plaintiff alleges that he made specific requests to be allowed to vote on Election Day and that those requests were refused. (E.g., Amended Complaint at 8.[4])

NYCDOC provided for voting by eligible Rikers inmates in connection with the 2004 election as follows. Upon receipt of NYCBOE documentation specifying relevant election dates and generally applicable filing deadlines, Mashere Pride-Rawls ("Pride-Rawls"), NYCDOC's Executive Director of Special Events and Community Resources, issued a directive notifying the relevant officers of NYCDOC's department-wide policies affording inmates the opportunity to register and vote.[5] The NYCBOE information was incorporated into Inmate Voting Information

---

[4] The Amended Complaint was signed under penalty of perjury. (Id., 15.)

[5] Under N.Y. Election Law § 5-106, as administered by the NYCBOE, inmates are eligible to vote "if they are at least 18 years of age and a United States Citizen,

posters that were placed in housing areas, law libraries, Inmate Grievance Offices, Chaplain Offices, Counseling Units and Program Areas, and on Program Carts. Voter registration and absentee ballot application forms were made available, on an ongoing basis, in English and three other languages. The deadlines and procedures applicable to the November 2004 general election were as follows. October 8, 2004, was the last date to register to vote. Absentee ballot applications were made available to inmates from October 11; such applications returned to NYCDOC by October 15 were to be delivered to the NYCBOE by NYCDOC. After October 15th and through the NYCBOE's October 26th absentee ballot request deadline, inmates were required to mail their absentee ballot applications directly to the NYCBOE. Such mailings were designated as "legal mail" under NYCDOC policies and inmates were not charged for postage. The NYCBOE was to mail the absentee ballots directly to eligible inmates. Inmates were required to mail their completed absentee ballots to the NYCBOE by November 1, 2004. (Pride-Rawls Decl. and Exs. B-F thereto.)

As noted above, Plaintiff alleges that he came into NYCDOC custody on October 20, 2004. That date was after the deadline for voter registration applications and prior to the October 26, 2004, deadline for mailing absentee ballot applications to the NYCBOE. He alleges that he applied for a ballot, but has proffered no evidence that he was registered to vote in the election, or that he completed and mailed the application in a timely fashion in accordance with the established procedures.

Plaintiff asserts, without proffering evidentiary support, that the "[New York City]

---

awaiting trial or disposition of their criminal case, not serving time for a felony conviction and not currently on parole for a felony conviction." (Pride-Rawls Decl. ¶ 2.)

Board [of Elections] did not send all the absentee ballots." (Pl.'s Opp. ("Response to City" portion) at 12.) In addition, Plaintiff alleges that there are no "emergency" procedures in place for inmates who do not receive their requested absentee ballots by mail and that no one from NYCDOC's program office worked past nine in the morning on Election Day 2004 so that inmates had no one to turn to for assistance in the voting process. (Pl.'s Opp. ("Response to City" portion) at 12, 16.) Plaintiff alleges that, on Election Day, defendant Mimms refused to accept a grievance from him regarding the lack of provision for in-person voting at Rikers on that day, and that defendant Robinson thereafter delayed the processing of the grievance. (Am. Compl. 8, 9, 12).

Plaintiff further alleges that he was thereafter transferred among the various Rikers facilities to frustrate his attempt to pursue a NYCDOC administrative grievance on this issue. (Amended Complaint, "Facts" at 8-9, 12; see also Pl.'s Opp. ("Response to City" portion) at 2.) He alleges that "after filing the initial complaint [with] city and state agents" of the department of corrections, he "was transferred on a harassing scale" in the amount of eight times in less than one year, even though he has "no disciplinary record." ("Response to City" at 2.) He alleges that "he has filed grievances in all of these facilities, never received a hearing, although he requested one, and upon transfer his claims at grievance were dismissed." (Id. at 2.) Plaintiff also alleges that the NYSBOE defendants and defendant Croce failed to respond to two letters he wrote to them regarding the failure to provide for in-person voting at Rikers.

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original). "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Claim Relating to Voting Procedures

The gravamen of Plaintiff's voting-related claim is his contention that the Constitution of the United States required the authorities to provide for in-person administration of voting for eligible inmates and others present at Rikers on Election Day 2004. The constitutional mandate is not, however, so categorical, and government officials' determinations as to voting procedures for eligible inmates are evaluated on a rational basis standard unless the record demonstrates that eligible prisoners are being precluded entirely from exercising their fundamental right to vote, in which case the restriction is subject to the compelling state interest test. See McDonald v. Bd. of Election Commrs., 394 U.S. 802, 806-10 (1969).

Thus, in O'Brien v. Skinner, 414 U.S. 524, 529-30 (1974), the Supreme Court

struck down a New York election statute that denied pretrial detainees and misdemeanants access to absentee ballots when they were confined in the county of their residence but not otherwise. The Court held that the statute imposed "'an unconstitutionally onerous burden on the . . . exercise of the franchise'" in that case because the potential voters in question were "denied any alternative means of casting their vote although they [we]re legally qualified to vote." Id. at 530 (citation omitted). By contrast, the Supreme Court had upheld a grant of summary judgment dismissing a complaint challenging similar absentee ballot restrictions in McDonald v. Bd. of Election Commrs., 394 U.S. 802 (1969). In McDonald, the Court found the higher standard inapplicable because, when "[f]aced . . . with a constitutional question, [it could not] . . . lightly assume, with nothing in the record to support the assumption, that [the state had] in fact precluded appellants from voting." McDonald, 394 U.S. at 808. In Goosby v. Osser, 409 U.S. 512 (1973), the Court held that the question of constitutionality of inmate voting restrictions was not precluded by McDonald, where the petitioners alleged that the scheme in question "absolutely prohibit[ed]" them from voting. Goosby, 409 U.S. at 521.

Neither Plaintiff's amended complaint nor any of his extensive papers in opposition to this motion is sufficient to raise an issue of material fact as to whether the Rikers Island voting procedures for the November 2004 election created an absolute barrier to his exercise of the fundamental right to vote. Plaintiff arrived at Rikers in time to have made a proper application for an absentee ballot, if he had already registered to vote in accordance with the generally applicable voter registration procedures. Plaintiff devotes two lines of his submissions to generalized allegations that he applied for an absentee ballot and did not receive one, but proffers no evidence that he properly and timely followed the available procedures nor even that he was a registered eligible voter in relation to the election in question. Instead, his papers are overwhelmingly

devoted to arguments that the corrections and elections authorities would best serve the interests of exercise of the franchise by providing on-site voting and that the Constitution requires the provision of such voting facilities.

Because the record is insufficient to support a conclusion by a reasonable fact finder that the Rikers procedures precluded Plaintiff from exercising his right to vote and because the record demonstrates that the extensive procedures for absentee voting, which are designed to comply with state and local voting access requirements, clearly have a rational basis, Plaintiff's constitutional argument fails and the moving defendants are entitled to judgment as a matter of law dismissing his voting access-related claims in their entirety.

Plaintiff's arguments concerning the potential insufficiency of the Rikers procedures for individuals taken into custody after the absentee ballot application cutoff date, and his assertions that NYCDOC's efforts to encourage voting are not as effective as NYCDOC makes out, need not be addressed here, for it is clear that Plaintiff came into custody in time to be able to vote under the procedures and Plaintiff does not proffer any evidence that he was unaware of the absentee ballot voting opportunity or the deadlines relating thereto.

Personal Involvement

With the exception of Plaintiff's grievance-related transfer claim against the NYCDOC defendants (discussed below), which was not addressed in the motions, all of Plaintiff's claims against the moving Defendants in their personal capacities will be also dismissed because Plaintiff has failed to allege facts sufficient to frame a genuine issue for trial as to whether they were personally involved in deprivations of his constitutional rights.

Section 1983 of Title 42 of the United States Code provides a civil remedy for those

claimants who are aggrieved by a person who, acting under the color of state law, deprives the claimant of rights secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983; Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes, 13 F.3d at 519. As such, "the first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3, (1979)). Under § 1983, liability may not be predicated upon a theory of respondeat superior. Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d. Cir. 1998). Therefore, to succeed on a section 1983 claim against an individual, a claimant must establish that the defendant was personally involved in the alleged deprivation. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1978); cf. Thomas v. Ashcroft, No. 04 Civ. 4001, 2006 WL 3423060, at *9 (2d Cir. Nov. 28, 2006) (discussing similar requirement for Bivens-type actions).

With respect to Plaintiff's voting access claims, Plaintiff does not allege that any of the moving Defendants was involved in or aware of his efforts to obtain an absentee ballot, or indeed, of any effort on his part to vote prior to Election Day. Nor does he allege that any of them was personally involved in or aware at any relevant time of the refusal of NYCDOC representatives to permit him to vote on Election Day. For these reasons, and for the reasons explained above in connection with Plaintiff's voting access-related claims, Plaintiff has failed to raise any genuine issue of material fact as to whether any of the moving defendants was personally involved in a violation of his constitutionally-protected right to vote.

With respect to Plaintiff's claims that individual defendants violated his constitutional rights by failing to respond to his complaint letters, the individual defendants are entitled to summary judgment. "An allegation that an official ignored a prisoner's letter of protest

and request for an investigation of allegations made therein is insufficient to hold an official liable for the alleged violations." Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (quoting Greenwaldt v. Coughlin, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)). It is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983. See, e.g., Bodie, 342 F. Supp. 2d at 203 (noting that receipt of a prisoner's complaint and subsequent failure to respond to it will not trigger individual liability under Section 1983); Pender v. United States, No. 97 Civ. 6917, 2000 U.S. Dist. LEXIS 20916, at *13-14 (S.D.N.Y. Aug. 3, 2000) (noting that, even to the extent that allegations made about constitutional violations are true, failure to investigate official misconduct is not a constitutional violation). The only exception to this rule is when a failure to investigate the alleged official misconduct itself results in the alleged constitutional violation. See Lewis v. Gallivan, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004). Here, the alleged constitutional violation was Plaintiff being deprived of his right to vote. Plaintiff's grievances regarding this alleged violation were filed after Election Day. As such, failure to investigate these grievances did not result in Plaintiff being deprived of his right to vote. Plaintiff's failure to proffer evidence sufficient to frame a genuine issue for trial with respect to the "failure to respond" claims entitles the individual defendants to summary judgment on this issue.

Official-Capacity Claim Against Defendant Croce

To the extent that Plaintiff can be understood to seek damages against defendant Croce in his official capacity, the Eleventh Amendment bars such a claim. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 101

(1984). Any court order delineating the proper means of accommodating voting in prison settings would operate against the State of New York. Furthermore, Section 1983 has been held not to have abrogated states' sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Lastly, New York has not consented to suits in federal court. See Jones v. Nat'l Communication and Surveillance Networks, 409 F.Supp. 2d 456, 467 (S.D.N.Y. 2006) (noting New York State has not consented to suit in federal court). Accordingly, defendant Croce will be granted summary judgment in his official capacity.

Additional Grievance-Related Transfer Claim

As noted above, Plaintiff's Amended Complaint includes allegations that he was subjected to a series of transfers among Rikers Island and other facilities following the filing of his voting-related grievance with NYCDOC, for the purpose of frustrating his efforts to pursue the grievance. He further alleges in his opposition papers to the instant motion that the transfers were made in retaliation for his exercise of a constitutional right. (Pl.'s Opp. 39.)

The City Defendants' motion papers do not address these allegations, which appear to be asserted against the NYCDOC officials, including defendants Mimms and Robinson, in their personal and official capacities. The motion thus fails to demonstrate that the NYCDOC defendants are entitled to judgment as a matter of law with respect to the transfer claim. Accordingly, the City Defendants' motion for summary judgment is denied to the extent it seeks dismissal of this claim.

Other Pre-Trial Issues Raised in Plaintiff's Opposition Papers

Plaintiff's various submissions in opposition to the instant motions include a number of assertions of rights to relief on issues apparently unrelated to those asserted in the complaint (see, e.g., Pl. NYSCOC Opp. at 3), as well as requests for discovery sanctions, conferences and injunctive relief. Plaintiff may, if he wishes to try to pursue these issues (as well as any issues relating to the status of service upon defendants Mimms and Robinson), raise them in further pretrial proceedings before Magistrate Judge Pitman, to whom this case continues to be referred for general pretrial management.

CONCLUSION

For the foregoing reasons, the City Defendants' motion is granted insofar as it seeks dismissal of the voting access-related aspects of the amended complaint, and is also granted insofar as it seeks dismissal of Plaintiff's claims relating to failure to act on his complaints about the voting issues. The motion is denied insofar as it seeks dismissal of Plaintiff's claim against the NYCDOC commissioner relating to transfers among facilities following the filing of Plaintiff's NYCDOC grievance concerning the voting issue. The motions of NYSBOE and defendant Croce are granted in their entirety. The reference of this matter to Magistrate Judge Pitman for general pretrial management purposes continues.

SO ORDERED.

Dated: New York, New York
January 4, 2007

LAURA TAYLOR SWAIN
United States District Judge